IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Genevieve Prescott,<br><br>    Plaintiff,<br><br>v.<br><br>At Management, LLC, *d/b/a Starbucks*,<br><br>    Defendant. | Case No. 3:25-cv-00178-SAL<br><br><br>**ORDER** |

Plaintiff Genevieve Prescott ("Plaintiff") brings this religious discrimination suit against her former employer, Defendant At Management, LLC, *d/b/a* Starbucks ("Starbucks"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. *See* ECF No. 1-1. She also asserts a state-law claim for wrongful discharge. *See id.* Starbucks moves to dismiss for failure to state a claim. *See* ECF No. 5. Plaintiff opposes the motion, ECF No. 10, and Starbucks has replied, ECF No. 12.

This matter is before the court on the Report and Recommendation ("Report") issued by United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), recommending Starbucks's motion be granted with respect to Plaintiff's state-law claim, but denied as to her Title VII claim. [ECF No. 18.] Starbucks objects to portions of the Report and the ultimate recommendation. [ECF No. 19.] For the following reasons, the court adopts the Report in part, as modified below.

**I.  LEGAL STANDARDS**

  **A.  Review of a Magistrate Judge's Report**

The magistrate judge makes only a recommendation to this court. The recommendation

1

has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* But "[i]n the absence of *specific* objections . . . , this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C. 2009) (emphasis in original).

### B. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6),[1] a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, the court

---

[1] As noted in the Report, Starbucks also moves for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure but makes no jurisdictional argument to support such a motion.

2

must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). The court need not, however, accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." *Id.* at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). When considering a motion to dismiss, a court can consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss, as long as they are "integral to the complaint" and "authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

## II.  DISCUSSION

### A.  The Report

The magistrate judge issued a thorough and well-reasoned Report, recommending Starbucks's motion be granted in part and denied in part. [ECF No. 18.] The Report sets forth in detail the relevant facts and standards of law, and the court incorporates those facts and standards with only a brief synopsis of the relevant facts. *See id.*

### 1. Factual Background

On July 9, 2023, Starbucks hired Plaintiff to work as a barista. *See* ECF No. 1-1 ¶ 10. Plaintiff is a Christian whose sincerely held religious convictions prohibit her from working on Sundays, the Christian Sabbath. *See id.* ¶¶ 8–9. When she was hired, she informed Starbucks of this belief and requested not to be scheduled on Sundays. *See id.* ¶¶ 11–12. Nevertheless, Starbucks scheduled her to work on Sunday, July 19, 2023. *Id.* ¶ 14. Plaintiff arranged for a coworker to cover that shift. *Id.* ¶ 15. But after that, Starbucks ceased scheduling Plaintiff for any shifts. *Id.* ¶ 16. After a month with no scheduled work, Plaintiff deemed herself terminated and filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"). *See id.* ¶¶ 6, 17. This lawsuit followed.

### 2. State-Law Claim for Wrongful Discharge

Starbucks argues Plaintiff's wrongful discharge claim fails because a plaintiff cannot pursue such a claim if she has an available statutory remedy. *See* ECF No. 5-1 at 6–10. Plaintiff did not respond to this argument. *See* ECF No. 18 at 2–3. As the magistrate judge correctly concluded, the claim fails under South Carolina law, which bars wrongful discharge claims where the employee has an existing statutory remedy for wrongful termination. *Id.* at 3 (citing *Barron v. Lab. Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011); *Dockins v. Ingles Mkts., Inc.*, 413 S.E.2d 18, 19 (S.C. 1992)). Starbucks does not object to the Report's recommendation regarding Plaintiff's wrongful discharge claim. [ECF No. 19 at 1 n.1.] Accordingly, finding no error in the magistrate judge's analysis, the court fully adopts this section of the Report without further discussion.

### 3. Title VII Claim

Title VII prohibits employers from discriminating "against any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). A religious discrimination suit may proceed under a "disparate treatment" or "failure to accommodate" theory. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996). Plaintiff proceeds under the latter.

The magistrate judge explained that, "[a]lthough a plaintiff in an employment discrimination case need not allege a *prima facie* case to survive a Rule 12(b)(6) motion, consideration of the requisite elements provides a useful backdrop when considering whether a plaintiff has alleged facts to raise a plausible claim." [ECF No. 18 at 4 (citing *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).] To establish a *prima facie* claim for failure to accommodate religion, a plaintiff must show the following: (1) a bona fide religious belief that conflicts with an employment requirement; (2) that she informed the employer of this belief; and (3) that she was disciplined for failing to comply with the conflicting requirement. *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008).

Starbucks focuses on the third element, arguing the complaint fails to allege Plaintiff was constructively discharged for her refusal to work on Sundays or that Starbucks failed to accommodate her.

#### i. *Constructive Discharge*

Constructive discharge occurs when a plaintiff (1) is discriminated against by her employer to the point where a reasonable person in the employee's position would have felt compelled to resign; and (2) resigns. *Green v. Brennan*, 578 U.S. 547, 555 (2016). Starbucks claims that this case is merely about a dispute over hours, which courts have held insufficient

to support constructive discharge. *See* ECF No. 18 at 6–7. The magistrate judge found Plaintiff's case to be distinguishable, however, because "[she] alleges that Starbucks 'ghosted' her after they scheduled her to work on a Sunday." *Id.* at 6. "Starbucks—unlike the cases relied upon by defendant—was not merely reducing [Plaintiff]'s hours; it was giving her no hours at all, effectively precluding her for a month from earning any income from her job. Some reasonable workers might find that intolerable." *Id.* at 7.

### ii.     *Failure to Accommodate*

The magistrate judge next explained that separation from employment is unnecessary for a plaintiff to state a plausible claim of religious discrimination:

> Even if the employer's actions here do not constitute a constructive discharge, the facts as pled raise a reasonable inference that Starbucks adversely acted against [Plaintiff] for refusing to work Sundays by not scheduling her for any work at all. . . . And if she can prove that Starbucks prevented her from earning any wages because she refused to work on Sundays, [Plaintiff] could potentially prevail on a failure-to-accommodate claim.

*Id.*

Starbucks argues the complaint does not plausibly allege that it adversely acted against Plaintiff or that it failed to accommodate her request: "Plaintiff specifically alleged that [Starbucks] permitted her to switch shifts with a coworker on a Sunday, thereby allowing Plaintiff to refrain from working on her Sabbath—the precise accommodation she purportedly requested." [ECF No. 5-1 at 11.] The magistrate judge rejected this argument:

> [T]he Complaint does not allege that [Plaintiff] asked permission to have someone else cover her Sunday shifts. It alleges that she asked to be scheduled on days other than Sunday. Absent development of the record as to whether Starbuck[s]'s proffered alternate accommodation was reasonable, it would be premature to dismiss [Plaintiff]'s Title VII claim on this basis.

[ECF No. 18 at 8 (citations omitted).]

B.    **Starbucks's Objections to the Report**

Starbucks raises three primary objections to the Report. First, it argues the magistrate judge erred in concluding that Plaintiff stated a viable constructive discharge claim under Title VII. *See* ECF No. 19 ¶¶ 1–5, 10. Second, it argues the magistrate judge misinterpreted the complaint. *See id.* ¶¶ 6–8, 10. Third, it argues the magistrate judge erroneously concluded Plaintiff plausibly alleged Starbucks adversely acted against her for refusing to work Sundays. *See id.* ¶ 9. Each objection is addressed in turn.

1.    **Constructive Discharge Analysis**

Starbucks argues the magistrate judge applied the incorrect legal standard in assessing whether a constructive discharge occurred. *Id.* ¶ 2. "Courts determine whether an employee's working conditions were intolerable by an objective standard that assesses whether a reasonable person in the employee's position would have felt compelled to resign." *Id.* (citing *Bristow v. The Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) ("[I]ntolerability is assessed by the objective standard of whether a reasonable person in the employee's position . . . would have had *no choice* but to resign." (quotations omitted) (emphasis in original))). Starbucks notes that "[t]he standard for proving constructive discharge is **higher** than the requisite proof for a hostile environment harassment claim or a discrimination claim."[2] It argues that the magistrate judge "erroneously

---

[2] *Id.* ¶ 3 (emphasis in original) (citing *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 440 (5th Cir. 2005); *Hayes v. Safe Fed. Credit Union*, No. 3:19-00881-MGL-TER, 2020 WL 1329390, at *2 (D.S.C. Mar. 23, 2020); *Wilson v. Genesis Healthcare, Inc.*, No. 4:17-cv-3318-RBH-TER, 2019 WL 3208842, at *4 (D.S.C. July 1, 2019), *adopted by*, 2019 WL 3207510 (D.S.C. July 16, 2019); *Jones v. United Health Grp.*, No. JKB-17-3500, 2019 WL 1903668, at *7 (D. Md. Apr. 29, 2019), *aff'd*, 802 F. App'x 780 (4th Cir. 2020)).

failed to cite and/or acknowledge that the standard for proving constructive discharge is higher," and that she applied the wrong standard in concluding that "[s]ome reasonable workers might find" receiving no work hours for a month to be intolerable. *See id.* ¶ 4 (quoting ECF No. 18 at 7). Finally, Starbucks claims that the magistrate judge disregarded binding Fourth Circuit precedent providing that a "partial or imperfect accommodation . . . that was difficult for everyone involved" does not give rise to a constructive discharge claim.[3] As explained below, the court agrees that Plaintiff has failed to state a claim for constructive discharge.

Starbucks is correct: the standard for proving a constructive discharge claim is higher than the standard for proving a hostile environment harassment claim or a discrimination claim. *E.g.*, *Nnadozie*, 730 F. App'x at 162 ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims."). Likewise, it is true that a "partial or imperfect accommodation . . . that was difficult for everyone involved" generally does not give rise to a constructive discharge claim. *Johnson*, 991 F.2d at 132.

Constructive discharge requires "circumstances of discrimination so intolerable that a reasonable person would resign." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) (quoting *Green*, 578 U.S. at 560). But "'[i]ntolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would

---

[3] *Id.* ¶ 5 (quoting *Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993); citing *Brady v. Bd. of Educ. of Prince George's Cnty.*, 222 F. Supp. 3d 459, 475–76 (D. Md. 2016), *aff'd*, 707 F. App'x 780 (4th Cir. 2018); *Phillips v. Donahoe*, No. 1:11CV279, 2013 WL 646816, at *12 (M.D.N.C. Feb. 21, 2013); *Feldman v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:11-cv-34-RJC-DSC, 2012 WL 3619078, at *6 (W.D.N.C. Aug. 21, 2012)).

have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Decoster v. Becerra*, 119 F.4th 332, 340 (4th Cir. 2024) (quoting *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019)). Instead,

> [i]ntolerability of working conditions . . . is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. An employee may not be unreasonably sensitive to his working environment. Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.

*Goldsmith v. Mayor & City Council of Balt.*, 987 F.2d 1064, 1072 (4th Cir. 1993) (quoting *Bristow*, 770 F.2d at 1255)).

While the magistrate judge did not err in observing that some reasonable workers might find a total lack of scheduled hours intolerable, ECF No. 18 at 7, the court finds that a reasonable worker in Plaintiff's position would also have recognized an alternative course: namely, contacting Starbucks to clarify why she was no longer being scheduled.

Indeed, "[a]n employee who resigns without . . . giving her employer a reasonable chance to remedy the situation is not constructively discharged." *Rhodes v. Johnson*, No. 3:13-cv-00109-MOC-DSC, 2014 WL 2531594, at *9 (W.D.N.C. June 5, 2014) (quoting *Poteat v. PSC Auto Grp., Inc.*, No. 3:03CV129, 2006 WL 2828836, at *4 (W.D.N.C. Sept. 29, 2006)). Similarly, this court has held "that an employee cannot demonstrate the reasonableness element of a constructive discharge when the employee wholly fails to seek redress from the employer prior to resigning." *Scott v. Ameritex Yarn*, 72 F. Supp. 2d 587, 595 n.4 (D.S.C. 1999); *see also McKinley v. Salvation Army*, 192 F. Supp. 3d 678, 685 (W.D. Va. 2016) (granting defendant-employer's motion for summary judgment on constructive discharge claim where plaintiff-employee resigned without requesting clarification or asking for modification of her schedule).

9

There are several reasons an employer might stop scheduling an employee, including inadvertence, administrative error, or discrimination. But "part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." *McKinley*, 192 F. Supp. 3d at 685 (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481 (5th Cir. 2008)). Here, Plaintiff alleges no attempt whatsoever to follow up with Starbucks during the month she was unscheduled. A reasonable worker, having received no clarification or confirmation of termination, would not have felt compelled to resign under such circumstances. *See Perkins*, 936 F.3d at 212.

"Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord," the Fourth Circuit "has insisted that it be carefully cabined." *Ali v. WorldWide Language Res., LLC*, 686 F. Supp. 3d 430, 456 (E.D.N.C. 2023) (quoting *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004), *abrogated on other grounds by Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222 (4th Cir. 2022)). Plaintiff's allegations do not rise to the level required. Accordingly, she has failed to state a claim for constructive discharge.

### 2.     Factual Interpretations & Inferences

As Starbucks correctly points out, the complaint does not allege that Starbucks prohibited Plaintiff from switching shifts or disciplined her for doing so. *See* ECF No. 19 ¶ 6. And while the complaint alleges that Plaintiff quit roughly a month after she stopped receiving shift assignments, it does not allege Starbucks's motive for not scheduling her. *See id.* Starbucks, citing *Johnson* and its progeny, argues that the complaint fails to show both intolerable conditions and a deliberate attempt to force Plaintiff to quit. *See id.* ¶¶ 5–7.

*Johnson* held that a constructive discharge claim requires "actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment." 991 F.2d at 131. There, the court rejected a constructive discharge claim because the employer had made some effort, albeit insufficient, to accommodate the plaintiff. *See id.* at 132. *Johnson* has limited relevance today. The Fourth Circuit has made clear that "'deliberateness' is no longer a component of a constructive discharge claim." *EEOC v. Consol Energy, Inc.*, 860 F.3d at 144. Unlike the plaintiff in *Johnson*, Plaintiff need not provide evidence that Starbucks "intentionally sought to drive her from her position." 991 F.2d at 132.

In her complaint, Plaintiff alleges she "was able to have a coworker cover her shift, in order to maintain [her] tenant [*sic*] of keeping the Sabbath Day holy and refrain from work." [ECF No. 1-1 ¶ 15.] Starbucks asserts this is "a binding admission that [Starbucks] accommodated Plaintiff by allowing her to switch shifts with a co-worker." [ECF No. 19 ¶ 7.] It argues that the magistrate judge misconstrued this allegation by "concluding that Plaintiff 'had to find someone else to cover her shift,' implying that the Company somehow burdened the Plaintiff instead of accommodating her." *Id.* ¶ 7 (quoting ECF No. 18 at 6). The court finds this is a fair characterization of the complaint. Plaintiff alleges she requested not to work Sundays. Starbucks scheduled her anyway. Whether allowing her to switch shifts with a coworker constituted a reasonable accommodation is a factual issue. But the burden was clearly on Plaintiff to find a replacement—an imposition not aligned with her initial request. Thus Starbucks's objection to this characterization is unavailing.

Starbucks also takes issue with the magistrate judge's use of the word "ghosted." *See id.* ¶ 8 ("The R&R likewise erroneously concluded that [Starbucks] 'ghosted' Plaintiff 'by not

11

scheduling her for any work at all,' after the Company accommodated her by allowing her to switch shifts with a co-worker." (quoting ECF No. 18 at 6)). It asserts that "the Complaint never referenced the term 'ghosted' and further never alleged or attributed any unlawful motive or animus to [Starbucks]." *Id.* "Instead, the Complaint merely alleged that, after [Starbucks] accommodated Plaintiff by allowing her to switch shifts with a co-worker, the Company 'thereafter neglected to accommodate Plaintiff, and ceased to schedule her for any more shifts.'" *Id.* (quoting ECF No. 1-1 ¶¶ 15–16).

While the term "ghosted" is not used in the complaint, the magistrate judge made it clear it was her own characterization based on the factual allegations. *See* ECF No. 18 at 6 n.2. Further, the magistrate judge did not attribute any unlawful motive or animus to Starbucks simply by using the term. Still, the term arguably implies one-sidedness—that Starbucks failed to respond despite Plaintiff's outreach. Yet, the complaint is silent as to whether Plaintiff attempted to follow up. As a result, the term may be imprecise. Based on the allegations, it would be more accurate to say that both parties ceased communication, whether intentionally or not.

        3.     **Adverse Action Analysis**

Finally, Starbucks objects to the magistrate judge's conclusion that even if Starbucks's actions do not constitute constructive discharge, "the facts as pled raise a reasonable inference that Starbucks adversely acted against [Plaintiff] for refusing to work Sundays." *See* ECF No. 19 ¶ 9; ECF No. 18 at 7. It argues that the Report failed to consider "Plaintiff's binding judicial admission" that Starbucks accommodated her by allowing her to switch shifts and "further

ignored the fact that the Complaint never tied [Starbucks]'s purported failure to schedule Plaintiff with any unlawful motive or animus."[4]

The court agrees with the magistrate judge's analysis and conclusion on this point:

[T]he Complaint does not allege that [Plaintiff] asked permission to have someone else cover her Sunday shifts. It alleges that she asked to be scheduled on days other than Sunday. Absent development of the record as to whether Starbuck[s]'s proffered alternate accommodation was reasonable, it would be premature to dismiss [Plaintiff]'s Title VII claim on this basis.

[ECF No. 18 at 8 (citations omitted).]

Again, the elements of a failure to accommodate religion claim are (1) the employee has a bona fide religious belief that conflicts with an employment requirement, (2) she informed the employer of this belief, and (3) she was disciplined for failure to comply with the conflicting employment requirement. *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d at 312. Here, Plaintiff alleges she "embraces a *bona fide* religious belief in the doctrine of Christianity, including the observation of the Sabbath and refraining from work or labor on said day." [ECF No. 1-1 ¶ 23.] She alleges her "observation of this belief conflicted with her work requirement that she work on assigned Sundays" and that Starbucks was aware of this conflict. *Id.* ¶¶ 24–25. Thus, Plaintiff has alleged facts sufficient to satisfy the first two elements.

Regarding the third element—whether Plaintiff was subjected to adverse action (*i.e.*, whether she was disciplined) for failing to work on Sundays—Plaintiff alleges that after she switched shifts with a coworker to avoid working on Sunday, Starbucks "thereafter neglected

---

[4] *See* ECF No. 19 ¶ 9 (citing *Doe 2 v. The Fairfax Cnty. Sch. Bd.*, 832 F. App'x 802, 806 (4th Cir. 2020); *Grice v. Balt. Cnty*, 354 F. App'x 742, 746 (4th Cir. 2009); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *Brown v. Tenn. Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980)).

to accommodate [her], and ceased to schedule her for any more shifts." *See* ECF No. 1-1 ¶ 16. These facts raise a reasonable inference that Starbucks adversely acted against Plaintiff for refusing to work on Sundays. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 347 (2024) ("To make out a Title VII discrimination claim, a [plaintiff] must show some harm respecting an identifiable term or condition of employment. What the [plaintiff] does not have to show is that the harm incurred was 'significant' or otherwise exceeded some heightened bar.") (abrogating Fourth Circuit precedent requiring heightened standard).

The magistrate judge correctly concluded that "if [Plaintiff] can prove [] Starbucks prevented her from earning any wages because she refused to work on Sundays, [she] could potentially prevail on a failure-to-accommodate claim." [ECF No. 18 at 7.] Starbucks's objection is therefore overruled.

### III.   CONCLUSION

After reviewing the Report, the applicable law, and the record of this case in accordance with the above standard, the court adopts the Report, ECF No. 18, as modified above and incorporates it by reference herein. As a result, Starbucks's motion to dismiss, ECF No. 5, is **GRANTED** as to Plaintiff's state-law claim for wrongful discharge but **DENIED** as to her Title VII claim.

**IT IS SO ORDERED.**

July 3, 2025                                                    Sherri A. Lydon
Columbia, South Carolina                            United States District Judge